THE SEABOARD AND ROANOKE RAILROAD COMPANY *vs.* WARD.

A plaintiff may, before the time for replying has arrived, enter an ex parte order dismissing the action on payment of costs; notwithstanding the defendant has put in an answer setting up a counterclaim against the plaintiff, and demanding affirmative relief. Otherwise, if the plaintiff has failed to reply to such answer, within the time prescribed by law.

APPEAL by the defendant from an order made at a special term, denying the defendant's motion to vacate an order of discontinuance, entered by the plaintiffs.

*D. Bowley,* for the plaintiffs.

*C. P. Kirkland,* for the defendant.

*By the Court,* MITCHELL, P. J. The plaintiffs, a foreign corporation, commenced their action against the defendant, for moneys received by him as their agent. He set up a counterclaim, arising out of transactions prior to the agency, and for which, if he has any claim, he can still commence an action. Before the time for replying arrived, the plaintiffs entered an ex parte order, dismissing the action on payment of costs. The defendant moved to vacate that order, and the judge at special term denied the motion. The defendant appeals.

The absolute right of a plaintiff to discontinue his action, on payment of costs, at any time before judgment or decree, or before the case was submitted to a jury, has been the law both of this country and of England, from the earliest period to this day, unless the code has taken away that right. It was allowed in chancery, even when the cause was called on for hearing, although the defendants were ready to argue the cause on the merits, and strongly opposed the dismissal. (*Curtis* v. *Lloyd,* 4 *Mylne & Keene,* 194.) Chancellor Walworth said, in *Cummins* v. *Bennett,* (8 *Paige,* 81,) that it is a *matter of course* to permit a complainant to dismiss his bill at any time before an interlocutory or final decree has been made in the cause, upon

payment of costs.   It was conceded by the counsel on both sides, that this right continued even if a cross-bill were filed, but that it did not carry the cross-bill with it.   That as the cross-bill was the bill of the defendant, it remained in court until he voluntarily dismissed it, or it was dismissed by his default, or disposed of by the judgment of the court.   It was also conceded that the right existed in replevin, where the defendant is an actor, and may notice the cause as well as the plaintiff; and continued in actions of contract after the law allowed a set-off to the defendant and his right to recover from the plaintiff any excess of the set-off beyond the plaintiff's claim.   In replevin the effect of the discontinuance was a judgment for the return of the property replevied; but that was only to carry out a necessary effect of the abandonment of the suit, viz. that property acquired by the commencement of the suit should be returned when the suit was voluntarily abandoned; and this abandonment showed that the plaintiff had no right to the property, at least in that action; it could be obtained only by the institution of the suit, and the foundation for retaining it failed, when the suit failed.   Doubt is expressed in *Wilson* v. *Wheeler,* (6 *How. Pr. Rep.* 51, 53,) whether on a discontinuance by the plaintiff in replevin it would be part of the judgment that the goods should be returned. But it is there admitted that " the old cases under the English statutes evidently favored a return ;" (*p.* 51;) and the section of the revised statutes there quoted, (2 *R. S.* 530, § 53,) is broad enough to include a discontinuance, whether on the motion of the plaintiff or defendant.   It is, "if the property specified in the writ have been delivered to the plaintiff, and the defendant moves judgment by discontinuance or nonsuit, such judgment shall be that the defendant have return of the goods," &c. The defendant recovers the judgment, although the order is made on the plaintiff's motion.

 The right of the plaintiff to discontinue his action having been sustained through all the changes of the law, until the adoption of the code, it must require clear and unequivocal language to take it away.   It is not to be taken away by implication, unless the implication be an absolutely necessary consequence

of some of the new enactments. The parts of the code referred to are § 274, allowing the court to grant to the defendant any affirmative relief *to which he may be entitled;* § 256, allowing either party, after issue, to give notice of trial ; § 258, allowing either party noticing the cause for trial to proceed with the case and take a dismissal of the complaint, or a verdict or judgment, as the case may require ; § 149, allowing the defendant, in his answer, to state any new matter constituting a defense or counterclaim ; § 153, allowing the plaintiff to reply to an answer, setting up a counterclaim ; § 154, allowing the defendant, when the plaintiff fails to reply or demur *within the time prescribed by law,* to move for such judgment as he is entitled to, and if the case require it, to have a writ of inquiry of damages ; and § 168, declaring that new matter in the answer, set up as a counterclaim, is to be deemed as admitted if it is not controverted.

The sections allowing a defendant, after issue joined, to notice the cause for trial, and after noticing it to proceed with the case and take such judgment as the case requires, apply to all defendants, whether they set up a counterclaim or not. Yet it is not denied that the plaintiff may discontinue except when a counterclaim is set up. These sections do not, therefore, help the defendant's position. They apply, too, only *after* issue is joined, not to this case, where the time to reply has not yet expired. Sections 140 and 153 only allow the counterclaim to be set up as a defense, and then permit the plaintiff to reply to it. They cannot affect this question. Section 154 allows the defendants, *when the plaintiff fails to reply or demur* to a counterclaim, to move for such judgment as he is entitled to. That does apply, and it does give a defendant an absolute right, in a certain event, to have an affirmative judgment in his favor. But it is not until that event occurs that it gives any such right. It gives the right and limits it, and gives it only when the plaintiff fails to reply or demur within the time prescribed by law. Before that failure on the part of the plaintiff he retains all the rights which he had before. After that he loses the right to discontinue, except with the special leave of the court. If the plaintiff replies to the counterclaim, and his reply be false or he

cannot sustain it, the defendant ought not to lose any right which he would have had if the false or unsustainable reply had not been put in. And therefore, in case of a counterclaim after issue joined, the defendant noticing the cause for trial should (as §§ 258 and 274 allow) have his affirmative relief, and such judgment as his case may require.

The notes of the codifiers to their report of 1850, under chap-4 of title 7, as to " the answer," (pages 267, 271,) were referred to, to show that they intended that the plaintiff should not have leave to discontinue. Such, no doubt, was the intention of those gentlemen in certain cases, as one of them present at the argument suggested; but as he also showed, they expressed that intention, not in the chapter relating to answers, which was adopted by the legislature, but in chapter 1 of title 8, as to judgments in general, which chapter was adopted in part by the legislature, but with the exclusion of the section referred to. This shows, first, that the codifiers deemed an express provision necessary to cut off the *general* right of the plaintiff to dismiss his own action, and that they did not mean to cut it off by implication ; and next that the legislature having the subject before them, did not choose to alter the old law. In the chapter last referred to, § 748 corresponds with § 245 of the code, §§ 749 and 750, with § 274 of the code, and § 751 with § 275 of the code. Then follows § 752, which was not adopted, and which proposed to abolish all other modes of dismissing an action except those therein specified : one of these modes was " by the plaintiff himself at any time before trial, if a provisional remedy has not been allowed, *or counterclaim made.*"

It would seem to be clear that the legislature did not intend to abolish this ancient and firmly established right of a plaintiff, merely because a counterclaim *was made*; and that the codifiers did not mean so, unless the express provision for this purpose should be adopted. By clear implication they have abolished it when the plaintiff fails to reply or demur to the counterclaim or to appear at the trial, but then only.

Whether, under the general power of the court to control its process and the orders made by it or in its name, it may not,

Brower *v.* Peabody.

when the defendant will otherwise lose his redress, vacate an order of dismissal entered by the plaintiff, need not be examined. This case presents no such circumstances.

The case of *Corkle* v. *Underwood*, decided by Judge Bosworth in the superior court, has been submitted to us since the argument of the cause. In that case the plaintiff had failed to reply to the counterclaim within the time prescribed by law, and then we agree that the plaintiff cannot dismiss his complaint without special leave. The order appealed from is affirmed, with costs.

[NEW-YORK GENERAL TERM, November 6, 1854. *Mitchell, Roosevelt* and *Clerke,* Justices.]